(173 App. Div. 57)

WING v. SMITH.

(Supreme Court, Appellate Division, First Department.   June 2, 1916.)

CORPORATIONS ☞81—SUBSCRIPTION TO STOCK—CONSTRUCTION OF CONTRACT.
     An agreement to purchase a corporation's unissued stock, which provid-
     ed that it should not become effective until signed by five-eighths of the
     outstanding stock, that the subscribing stock should be transferred to a
     committee, and that a failure of any subscriber to make the transfer
     should not release the other subscribers, *held* binding when signed by the
     specified amount of stock, irrespective of whether such stock was there-
     after validly transferred to the committee.
     [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 266-284;
     Dec. Dig. ☞81.]

Appeal from Trial Term, New York County.

Action by Thomas E. Wing, as substituted trustee, against Dele-
van Smith.   Judgment for plaintiff after a trial before the court
without a jury, and defendant appeals.   Affirmed.

See, also, 165 App. Div. 958, 150 N. Y. Supp. 447.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT,
SMITH, and DAVIS, JJ.

Charles A. Decker, of New York City, for appellant.
Burt D. Whedon, of New York City, for respondent.

LAUGHLIN, J.   On the 1st day of September, 1907, the defend-
ant and 28 others, who severally owned in the aggregate 2,000
shares of the capital stock in the Refugio Syndicate, a New Jersey
corporation, which was all the stock issued at that time, entered
into an agreement by which they constituted two of their number,
George W. McElhiney and Ernest A. Wiltsee, "syndicate managers"
for the purchase of the remaining unissued stock of the corporation,
aggregating 8,000 shares, and thereby authorized the managers to
purchase for the several subscribers an amount of the unissued
stock in proportion to their respective holdings of the stock there-
tofore issued, and each subscriber agreed to pay his subscription
on call of the managers as therein provided.   The agreement was
subsequently pledged with the Guardian Trust Company, as trustee
for whoever should become the holder of a note for $800,000, made
by the syndicate managers, payable to bearer, to raise money for the
purchase of said unissued stock, but which was subsequently de-
livered to said Refugio Syndicate itself for the stock.   The Trust
Company resigned as trustee on September 28, 1910, and the plain-
tiff became trustee in its place, and brought this action to recover
the balance unpaid on defendant's subscription which was for $24,-
600, upon which he paid $6,150, and the recovery is for the balance,
together with interest.

The defendant interposed three defenses. The subscription agree-
ment authorized the managers to borrow money on their promissory
note to purchase the unissued stock, and to pledge the stock of the
subscribers which was to be delivered to the managers, and the stock

to be purchased, and the subscription agreement, as security therefor. Instead of taking that course, the managers gave their note for $800,000, the purchase price of the unissued stock, which was accepted by the corporation. The first defense presented the question as to whether the payment for the stock by the note was in contravention of the statute of New Jersey. The second defense was that the corporation had not procured a certificate entitling it to do business in this state, but there was no evidence that it did business here unauthorized without such a certificate. Like defenses to the first two were interposed in a former action brought by plaintiff as trustee against another subscriber, and on evidence to the same effect as that presented herein they were held to be insufficient, and a recovery was had, which was affirmed by this court without opinion. Wing v. Stringer, 163 App. Div. 890, 147 N. Y. Supp. 1150. In this action a demurrer was interposed to the same defenses, and the demurrer was sustained, and the decision was affirmed by this court on the decision in the former case. 165 App. Div. 958, 150 N. Y. Supp. 447.

The appellant has now abandoned the first two defenses, and relies on the other, which presents only one point not passed upon by this court. It was provided in the subscription agreement, as follows:

"This agreement shall not become binding or effective unless subscriptions to the amount of $500,000 in cash have been made hereto within 90 days from the date hereof."

And further that each subscriber should subscribe for the unissued stock in the proportion the amount of the stock then held by him bore to the outstanding stock, and that he should "upon the execution" of the subscription agreement—

"assign, transfer, set over, and deliver all of the shares of the capital stock of the Refugio Syndicate owned and held by him as aforesaid, to the syndicate managers," and should "receive in full payment therefor a certificate from the syndicate managers certifying to the interest of such subscriber in the syndicate, subject to the terms and conditions of this agreement. Such certificate shall be in assignable form and transferable on the books of the syndicate managers by assignment and surrender, and upon such assignment and surrender a new certificate shall be issued, and the person accepting such assignment, or receiving such new certificate, shall be bound by the terms of this agreement as fully to all intents and purposes as if signing the same, but no such transfer or assignment shall release the original subscriber hereto."

The defendant subscribed for 246 shares of the unissued stock, and he surrendered the stock he held, the amount of which is not stated, but must have been, according to the terms of the agreement, 61½ shares. In the third defense, not so numbered, it is alleged that on the 1st of September, 1907, the subscribers, pursuant to the provisions of the subscription agreement herein quoted, "assigned, transferred, set over, and delivered" their respective holdings, aggregating 2,000 shares, of the outstanding stock to the managers, and received the certificates provided for in the subscription agreement, and it is alleged, in effect, that it was essential to a valid transfer and delivery of said stock to the managers that the stock

transfer tax imposed by chapter 241 of the Laws of 1905 be paid, and that it was not paid. All of the allegations of this defense were expressly admitted.

It is contended by the appellant in support of this defense that it was a condition precedent to the subscription agreement becoming effective that the subscribers owning at least 1,250 shares of the outstanding stock sign it and transfer their holdings to the managers, and that proof of compliance with those provisions of the agreement is necessary to a recovery. While it is alleged by the appellant, and admitted by the plaintiff, that the necessary number of shares to render the agreement binding were delivered to the managers, it is claimed by the appellant that, on the further admission that the stock transfer tax was not paid, such delivery was invalid, and proof thereof was expressly prohibited by the statute, which so far as material to this question provides as follows:

"No transfer of stock made after June 1, 1905, on which a tax is imposed by this article, and which tax is not paid, at the time of such transfer, shall be made the basis of any action or legal proceedings, nor shall proof thereof be offered or received in evidence in any court in this state." Laws 1896, c. 908, § 323, added by chapter 241, Laws 1905; Tax Law, § 278.

Although delivery has been thus admitted, appellant contends that proof of a *legal* delivery and transfer, involving payment of the tax, is a condition precedent to his liability. The respondent contends that by the express terms of the subscription agreement it became binding, and each subscriber became liable upon its being signed by the necessary proportion of stockholders, as concededly it was, and that liability does not depend upon whether the subscriber performed his further obligation to deliver or transfer his stock to the managers, or whether such delivery or transfer was legally made. The statute, so far as material, provides as follows:

"There is hereby imposed, and there shall immediately accrue and be collected, a tax as herein provided, on all sales, or agreements to sell, or memoranda of sales, or deliveries, or transfers, or shares or certificates of stock, in any domestic or foreign association, company or corporation, made after the 1st day of June, 1905, whether made upon or shown by the books of the association, company or corporation,, or by any assignment in blank, or by any delivery, or by any paper, or agreement, or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, or to secure the future payment of money, or the future transfer of any stock, on each share of one hundred dollars of face value or fraction thereof, two cents. It is not intended by this act to impose a tax upon an agreement evidencing the deposit of stock certificates as collateral security for money loaned thereon which stock certificates are not actually sold, nor upon such stock certificates so deposited." Laws 1896, c. 908, § 315, added by chapter 241, Laws 1905, amended by chapter 414, Laws 1906.

Manifestly the transfer to the managers was a mere delivery, not intended to pass the beneficial ownership, but solely to enable the managers to pledge the stock as security for the note, and it was contemplated that each subscriber, on the payment of his subscription, should receive back his stock, or a like amount of stock, together with his proportion of the unissued stock to be purchased. It would seem, therefore, that the transaction contemplated came within the

exception of the statute; but, however that may be, by the express terms of the agreement, the liability of each subscriber became fixed when the subscription agreement was signed by the necessary number. It is not claimed that the defendant's liability could be defeated by his own failure to make a legal delivery; but it is contended that he may defend on the ground that a sufficient number of other subscribers did not make a legal delivery or transfer. In view, however, of the clear express language of the subscription agreement imposing the liability, I think that, if it were the fact that a legal delivery to the managers has not been made by the other subscribers, that would be no defense, for it is further provided in the subscription agreement as follows:

"Each subscriber hereby agrees to perform all his undertakings hereunder from time to time on call of the syndicate managers to the full extent of the amount set opposite his name, and the failure of any subscriber to perform any of his undertakings hereunder shall not affect or release any other subscriber."

The recovery was therefore right, and the judgment should be affirmed, with costs. All concur.